GARDENIER *vs.* TUBBS and others.

Where property is bought at a sheriff's sale by the plaintiff in an execution and left in the possession of the defendant, without any good excuse shown, the sale is *void* as against other creditors of the defendant, notwithstanding that the plaintiff subsequently and before the levying of an execution on the part of other creditors, reduce the property to his actual possession. The sale thus being held void, the defendant in the execution is not a *competent witness* AGAINST the plaintiff in a subsequent controversy, between him and other creditors ; though *it seems* he would be a competent witness FOR the *plaintiff.*
Where however the testimony of such witness was admitted, when called *against* the plaintiff, the court on a *case* made refused to grant a *new trial,* on account of the erroneous admission of such testimony, on the grounds that the defence was clearly sustained independent of such proof, and that there was no exception taken to the decision of the judge in admitting the testimony.

THIS was an action of *trover*, tried at the Montgomery circuit in May, 1838, before the Hon. JOHN WILLARD, one of the circuit judges.

The suit was brought for the taking by the defendants of a yoke of oxen and other property, purchased by the plaintiff at a sale of the property of one *B. Whitcomb,* on the *eighth* day of August, 1837. Whitcomb's property was sold by virtue of an execution, in favor of the now plaintiff, for $189 93, and of two justices' executions in favor of other persons, for $13 60. The property after the sale was left in the possession of Whitcomb, until the *twenty-first* day of August, when the plaintiff took possession thereof. On the *twenty-second* day of August, it was levied upon by *Combes,* one of the defendants in this cause, as a deputy sheriff, by virtue of an execution in favor of *Tubbs* and *Cronkhite,* two others of the defendants, against B. Whitcomb, issued on a judgment confessed by Whitcomb, on '22d August, in favor of Tubbs and Cronkhite, for $53 18 damages, and $13 15 costs : the action in which the judgment was confessed was commenced by the filing of a declaration on the 18th August, and on the 29th August, the property thus levied upon was sold by Combes. The defendants called as a witness

one *Philip P. Graff*, whose testimony went to prove that previous to the sale of Whitcomb's property, on the *eighth* of August, 1837, it was agreed between the plaintiff and Whitcomb, that the property should be bought in by the plaintiff, and left in the possession of Whitcomb, to give the latter an opportunity to dispose of it, and whatever it should bring more that the plaintiff's debt, Whitcomb should retain. The defendants also produced in evidence the testimony of Whitcomb, taken under a commission. Whitcomb testified that the plaintiff bought in his property for between $175 and $200, which was worth upwards of $300, and he confirmed the testimony of *Graff*, in reference to the agreement between the plaintiff and himself, as to his right to *dispose* of the property. The plaintiff offered to contradict by proof, some of the statements made by Whitcomb: which offer was rejected and the proof refused to be received. The judge charged the jury that a sale of property under an execution was *void* if the property was bought in by the plaintiff, and left in the possession of the defendant in the execution, unless some good excuse was shown for so leaving it; that no such excuse had been shown in this case; and that the subsequent removal of the property on the day preceding the levy under the defendant's execution, did not remove the presumption of fraud, and that the defendants were entitled to a verdict. The jury found accordingly. The plaintiff, on a *case* made, moved for a new trial.

*M. T. Reynolds*, for the plaintiff, insisted that the plaintiff had not lost his right to the property, by leaving it in the possession of the defendant in the execution for a few days after the sale, inasmuch as he removed it, and took the actual possession thereof, previous to any rights attaching on the part of other creditors. He also contended that the evidence of *Whitcomb* ought not to have been received, he being an incompetent witness, as against the plaintiff.

*S. Stevens*, for the defendants.

*By the Court*, COWEN, J. Several exceptions seem to have been taken at the trial; but no bill of exceptions was

Gardenier v. Tubbs.

sealed, and the matter comes before us on a *case*. The fraud was completely established, independent of Whitcomb's deposition. The possession after sale, especially when fortified by the agreed trust, for Whitcomb's benefit, as proved by Philip P. Graff, fully authorized the judge to direct a verdict for the defendants.

We must therefore deny a new trial, although we think that *Whitcomb* was interested, and that his deposition should have been excluded. As between him and the plaintiff, the sale was valid, and the executions therefore were satisfied and must continue to be so considered, notwithstanding the plaintiff's failure to sustain the sale to him. The same property is, by the second sale, made to pay other creditors of Whitcomb, whereas had the first been sustained, it would have paid but the set of executions under which it was made. This double payment, Whitcomb was interested to promote. The first sale was executed, and the plaintiff can never allege his own fraud to avoid it, and thus revive his claim. It binds the same as if it had been an ordinary conventional sale to him, for the purpose of defrauding creditors, in which case, though the vendor would be a competent witness for him, he would clearly be incompetent for the creditor who should seek to avoid the sale. *Rea* v. *Smith* 19 Wendell, 293. In the last case there is no balance of interest with the vendor, for he is not liable in respect to a failure of title by reason of the fraud. Both parties admit his title and claim through him ; and mutual fraud is the only question. This the law never will recognize as a ground of relief, either one way or the other, as between the parties to it. It will neither enforce nor annul a contract mutually fraudulent. Therefore where the vendor is called for the vendee, he is receivable on the ground of an interest, to testify in favor of the creditor. His interest all lies that way. By sustaining the creditor's claim, he pays his own debt without fear of any consequences on the other side injurious to himself. Such is the case of interest which the creditor is put to encounter when he offers his debtor as a witness, to impeach his own fraudulent sale to another. Failing to maintain the defence, the judgment

debt revives, and a new execution may go against the debt-
or. · To make him competent, therefore, he must be releas-
ed from such consequence.

The proof that Whitcomb had offered the joint note of the
*Graffs* to the plaintiff, and that he did not communicate to
Philip P. Graff the agreement with the plaintiff, was proper-
ly excluded. As independent proof, it was totally irrele-
vant; and if intended as a contradiction of Whitcomb's ac-
count in respect to the same matter, it was inadmissible as
going to impeach him in a matter wholly immaterial to the
issue between the parties.

The judge erred in receiving Whitcomb's deposition ; but
the question coming here on a *case,* and there being in fact
no exception taken to the decision of the judge in this re-
spect, and the defence being clearly sustained independent
of the deposition, a new trial is denied.

New trial denied.